IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES *ex rel.* MAURICE McDONALD, | ) ) ) |
| Petitioner, | ) Civil Action No.: 06 C 5762 ) |
| v. | ) Suzanne B. Conlon, Judge ) |
| DON HULICK, Warden, Menard Correctional Center, | ) ) ) ) |
| Respondent. | ) |

## MEMORANDUM OPINION AND ORDER

Maurice McDonald was convicted of murder and armed robbery after a state court bench trial. A jury found him eligible for the death penalty and he was sentenced to death. McDonald lost his direct appeal to the Illinois Supreme Court. His death sentence was commuted by Governor George Ryan. State court post-conviction relief was denied. Acting *pro se*, he petitions this court for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254. For the reasons set forth below, the petition is denied.

## BACKGROUND

The facts are drawn from the Illinois Supreme Court's decision in *People v. McDonald*, 660 N.E.2d 832 (Ill. 1995). This court presumes the facts are correct because McDonald has not shown they are inaccurate by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Todd v. Schomig*, 283 F.3d 842, 846 (7th Cir. 2002) (state court's factual finding are presumed correct unless petitioner presumption by clear and convincing evidence).

## I. The Trial

McDonald was employed as a "bodyguard/gofer" for Lester Coats, a southside Chicago drug dealer. On the evening of February 27, 1983, Coats was home counting the proceeds of a recent drug sale. According to Coats' family members present that night, he had $13,000 in cash, plus jewelry, guns, and food stamps. The items were locked in a metal storage box and placed in the hall closet. By 1:30 a.m., all Coats' family members had left and only he and his girlfriend, Brenda Robertson, remained in the home.

At approximately 4:40 a.m. on February 28th, the Chicago police responded to a "man down" call at Coats' address. They found Coats collapsed and bleeding on the sidewalk in front of his house. He died later that morning. The officers followed a blood trail into his ransacked home. His money, jewelry, and food stamps were gone. A bloodstained knife was found in the kitchen sink. Wires to the security alarm were cut. A second blood trail led the officers to the basement where they found Robinson's body. She had been stabbed multiple times and was bound with an electrical cord. Five food stamps were laying near her body. Autopsies revealed both Coats and Robinson died from stab wounds, likely from the same knife.

Between 2:00 and 4:00 a.m., McDonald showed up at the home of his girlfriend, Rosemary Small. McDonald had jewelry, food stamps, and two guns with him. He told Small they had to leave because someone had just shot at him. McDonald instructed Small to put the jewelry and food stamps in her purse. They left Small's home and went to the home of Small's cousin, Denise Thomas. Thomas recalled them arriving at approximately 5:00 a.m. McDonald carried a wrapped-up sheet containing his clothes, a telephone, and two guns. He was also carrying a rifle. When McDonald departed later that morning, he left the guns at Thomas' home. Police ultimately

2

recovered the food stamps, jewelry, and guns. The serial numbers on the food stamps in Small's purse corresponded to those on food stamps found near Robinson's body. The jewelry and guns were identified as belonging to Coats. McDonald's palmprint was identified on a food stamp recovered from Coats' basement.

Nine years later, McDonald was tried for the robbery and murder of Coats and Robinson. He was brought to Illinois on detainer from Nevada, where he was imprisoned for an unrelated murder. McDonald represented himself with the help of appointed standby counsel. McDonald testified that he redeemed a large amount of food stamps and bought cocaine for Coats on the evening of February 27th. At around 10:00 p.m., he left to move some items from his apartment. While loading his car, he was shot at by an unidentified assailant. McDonald then went to his uncle's house until 2:00 a.m. Next, he went to Small's house. Between 6:00 and 7:00 a.m., he drove to Coats' house, but left when he saw the police cars and discovered he was a murder suspect. McDonald's family members testified that the jewelry from Small's purse was hers, and the guns at Thomas' house belonged to McDonald. A fingerprint expert testified that unidentifiable prints were found at the murder scene. However, the expert acknowledged that McDonald's palmprint was on a food stamp near Robinson's body.

The court found McDonald guilty on all counts. Acting *pro se*, McDonald requested a sentencing jury. The jury found him eligible for the death penalty after hearing mitigation testimony from McDonald and his witnesses. The court sentenced McDonald to death on the murder counts and 60 years in prison for the robbery. The death sentence was commuted when former Governor George Ryan granted clemency to all death-row inmates.

## II. Direct Appeal and Post-Conviction Proceedings

In September 1993, McDonald filed a *pro se* direct appeal to the Illinois Supreme Court. *See* ILCS S. CT. RULE 603 (direct appeal to Supreme Court in death penalty cases). Appointed counsel filed a separate brief. The issues raised were: whether (1) McDonald's speedy trial rights were violated under the Interstate Agreement on Detainers Act ("the Detainers Act"); (2) the evidence demonstrated McDonald's actual innocence; (3) death penalty eligibility was proven beyond a reasonable doubt; (4) mental state evidence was improperly barred during the death penalty eligibility proceedings; (5) McDonald's Eighth Amendment rights were violated because the sentencing jury was barred from hearing actual innocence evidence; (6) McDonald's Sixth, Eighth, and Fourteenth Amendment rights were violated because the trial court communicated with the jury *ex parte*; (7) the trial court should have questioned a juror who was hesitant during polling; and (8)-(9) the Illinois death penalty statute was unconstitutional. Resp. at Ex. A. The Illinois Supreme Court affirmed McDonald's conviction and sentence in a detailed opinion. *Id.*; *McDonald*, 660 N.E.2d at 851.

In April 1998, McDonald filed a petition for post-conviction relief. *Id.* at Ex. I. The petition raised twenty-six grounds, primarily addressing the constitutionality of the Illinois death penalty statute. The petition also reargued grounds raised on direct appeal and raised new grounds of prosecutorial and police misconduct. The petition was denied without an evidentiary hearing. *Id.* at Ex. L.

McDonald appealed the denial of post-conviction relief directly to the Illinois Supreme Court. The appeal was transferred to the appellate court after his death sentence was commuted. McDonald raised five appellate issues: (1) speedy trial rights violations; (2) ineffective assistance

4

of appellate counsel; (3) police perjury and destruction of exculpatory evidence; (4) improper denial of post-conviction discovery; and (5) newly discovered evidence establishing actual innocence. *Id.* at Ex. N. The appellate court affirmed the dismissal of McDonald's petition in a detailed order. *Id.* at Ex. Q (unpublished 18-page order).

McDonald petitioned the Illinois Supreme Court for leave to appeal the appellate court's ruling. The *pro se* petition argued: (1) McDonald's extradition warrant was obtained by fraud; (2) the Detainers Act's time limits were violated; (3) McDonald was denied the right to pretrial counsel; (4) the trial court erred by refusing to rule on pretrial motions; (5) the prosecution violated *Brady v. Maryland*, 373 U.S. 83 (1963), by failing to disclose extradition papers; (6) appellate counsel was ineffective for failing to investigate the extradition; (7) there was insufficient evidence of guilt; (8) the police committed perjury and destroyed evidence; (9) newly discovered evidence demonstrated McDonald's actual innocence; and (10) the indictment was improperly modified. Resp. at Ex. R. The Illinois Supreme Court denied the petition. *Id.* at Ex. S; *People v. McDonald*, 857 N.E.2d 679 (Ill. 2006) (Table).

## DISCUSSION

McDonald's *pro se* petition for a writ of *habeas corpus* raises the following claims: (1) violation of the Detainers Act's time limits; (2) involuntary waiver of the right to trial counsel; (3) ineffective assistance of trial counsel for failing to investigate extradition defects; (4) insufficient evidence of guilt; (5) police perjury and destruction of evidence; (6) *Brady* violations based on non-disclosure of crime scene photographs; (7) sentencing jury improperly barred from considering residual doubt; and (8) improper *ex parte* communications between the court and the sentencing

jury.[1] The state contends the claims are procedurally defaulted or without merit.

## I. Legal Standards

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides that *habeas* relief may be granted only if the state court proceedings were "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *Brown v. Sternes*, 304 F.3d 677, 690 (7th Cir. 2002). The state court's decision must be unreasonable; it is not enough that the state court was wrong or this court would decide the issue differently. *Danks v. Davis*, 355 F.3d 1005, 1008 (7th Cir. 2004).

Under § 2254, the petitioner must fairly present his federal claims to the state courts in "one complete round" of appellate review before a federal court may grant *habeas* relief. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). To satisfy the one complete round requirement, McDonald must have presented his claims on either direct appeal or post-conviction review at each stage of the appellate process, including the Illinois Supreme Court. *Harrison v. McBride*, 428 F.3d 652, 661 (7th Cir. 2005). Both the operative facts and the controlling legal principles must be presented. *Id.*

If McDonald meets the fair-presentment requirement, the court will conduct a deferential review of the state court decisions. 28 U.S.C. § 2254(d); *Woodford v. Visciotti*, 537 U.S. 19, 24

---

[1] Portions of McDonald's petition are incomprehensible. Although the court construes *pro se* pleadings liberally, *Haines v. Kerner*, 404 U.S. 519, 521 (1972), it is not required to sift through incomprehensible allegations "in the hope of spotting a diamond in the rough." *Tucker v. United States Parole Comm.*, No. 01-C-544-C, 2001 WL 34371695, at *1 (W.D. Wis. Dec. 4, 2001) (Crabb, J.). Nonetheless, the court has parsed the petition to determine all cognizable grounds for relief.

(2002) (federal courts must give state court decisions the "benefit of the doubt"). The court cannot issue a writ of *habeas corpus* simply because in its independent judgment the state court decision incorrectly applied the law. *Yarborough v. Alvarado*, 541 U.S. 652, 665 (2004). A federal court must defer to state courts if their decisions are reasonable or "minimally consistent with the facts and circumstances of the case." *Schulz v. Page*, 313 F.3d 1010, 1015 (7th Cir. 2002).

## II. McDonald's *Habeas* Claims

### A. Procedurally Defaulted Claims

A number of McDonald's claims are procedurally defaulted because he failed to fairly present them in "one complete round" of appellate review. First, the ineffective assistance of trial counsel claim was never raised before the state courts. Resp. at Exs. A, I, N, R. Although McDonald argued at various stages that his *appellate* counsel was ineffective, he failed to claim his stand-by *trial* counsel was ineffective. McDonald cannot raise a claim for the first time in a federal *habeas* petition. *Rodriguez v. Peters*, 63 F.3d 546, 555 (7th Cir. 1995); *Burgin v. Broglin*, 900 F.2d 990, 996 (7th Cir. 1990).

Second, the police misconduct claim was not included in McDonald's direct appeal or post-conviction petition; it was raised for the first time in his post-conviction appeal. Resp. at Exs. A, I, N. The appellate court denied the claim because it was not previously raised with the trial court. *Id.* at Ex. Q, p. 9. This claim is defaulted because it was denied on adequate and independent state law grounds and was not raised throughout McDonald's post-conviction proceedings. *See Sazbo v. Walls*, 313 F.3d 392, 395 (7th Cir. 2002) (failure to comply with states' procedural rules provides independent and adequate state ground blocking federal collateral review).

Third, the claims of involuntary waiver of the right to trial counsel and that the government

7

committed *Brady* violations were raised for the first time in McDonald's petition for leave to appeal the appellate court's denial of post-conviction relief. Resp. at Ex. R. Presenting these claims for the first time in a discretionary petition is insufficient to preserve *habeas* review. *Castille v. Peoples*, 489 U.S. 346, 351 (1989); *Wilson v. Briley*, 243 F.3d 325, 328 (7th Cir. 2001).

McDonald's procedural defaults can be overcome if he demonstrates "cause" and "actual prejudice," or a "fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Gomez v. Jaimet*, 350 F.3d 673, 679 (7th Cir. 2003). McDonald fails to make the required showing. He does not contend any external factors caused him to forego specific claims. *See Murray v. Carrier*, 477 U.S. 478, 488 (1986) (procedural default turns on whether objective factors impeded efforts to comply with procedural rules). To the contrary, his voluminous filings indicate he is capable of raising dozens of claims at each appellate stage. *See e.g.*, Resp. at Ex. I (raising 26 grounds in petition for post-conviction relief). He simply chose to exclude claims based on strategy or personal choice. Nor can McDonald demonstrate a fundamental miscarriage of justice. He provides no evidence of actual innocence. His conclusory and speculative innocence allegations were rejected by the appellate court. Resp. at Q, p. 16-18. The Illinois Supreme Court found sufficient evidence of his guilt. *McDonald*, 660 N.E.2d at 841-44 (rejecting sufficiency of the evidence argument). This court finds no fundamental miscarriage of justice that warrants disregarding McDonald's procedural default.

### B. The Detainers Act

McDonald argues *habeas* relief should be granted because his trial did not take place within the time limits specified by the Detainers Act. This argument assumes the alleged violations are cognizable under § 2254. In *Reed v. Farley*, the Supreme Court held that Detainers Act claims are

8

non-constitutional. 512 U.S. 339, 347 (1994). Therefore, to obtain *habeas* relief the petitioner must show the alleged violations qualify as either "a fundamental defect which inherently results in a complete miscarriage of justice [or] an omission inconsistent with the rudimentary demands of fair procedure." *Id.*

McDonald fails to comply with *Reed*'s requirements. The Illinois Supreme Court painstakingly addressed the Detainers Act claims, finding that McDonald failed to comply with procedural requirements by not requesting disposition of his case in writing. *McDonald*, 660 N.E.2d at 839 (Article III of Detainer Act requires written request to trigger 180-day rule). Most of the delays were properly tolled for good cause. *Id.* at 840-41 (Article IV tolled where "necessary or reasonable continuance is granted for good cause"). The Illinois Supreme Court determined over a hundred days of delay were attributable to McDonald's own motions and obtaining his palmprints due to a hand disfigurement. *Id.* at 841. Nothing in the Illinois Supreme Court's decision or McDonald's petition indicates there was prejudicial error qualifying as a "fundamental defect" resulting in a miscarriage of justice. The alleged violations fail to raise a cognizable claim under § 2254. *See Knox v. Wyoming Dept. of Corr.*, 34 F.3d 964, 968 (10th Cir. 1994) (rejecting Detainers Act claim where reasonable delay caused by petitioner's motions).

### C. Sufficiency of the Evidence

McDonald argues there was insufficient evidence to find him guilty of Coats' and Robinson's murders. He contends a myriad of "facts" demonstrate his innocence, including police destruction of evidence and his alibi defense. Pet. at 10. In determining a sufficiency of the evidence claim, the court inquires "whether, after viewing the evidence in the light most favorable to the prosecution,

9

any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see also United States v. Seawood*, 172 F.3d 986, 988 (7th Cir. 1999) (characterizing burden of proof on sufficiency of the evidence challenges as "a nearly insurmountable hurdle").

The Illinois Supreme Court cited the *Jackson* standard and found sufficient evidence of McDonald's guilt. The Court relied on the following trial evidence: McDonald's palmprint found on a food stamp at the crime scene, *McDonald*, 660 N.E.2d at 842; both fingerprint experts agreed the palmprint was McDonald's, *id.*; McDonald gave Smith food stamps the morning of the murder with serial numbers matching those at the crime scene, *id.*; McDonald possessed guns and jewelry identified as belonging to Coats, *id.* at 843; McDonald fled Chicago shortly after the murders, *id.*; and witness testimony and expert evidence did not rule out McDonald's presence at Coats' home around the time of the murders, *id.* at 844. These facts were sufficient to support McDonald's guilt beyond a reasonable doubt. *See Holland v. United States*, 348 U.S. 121, 139 (1954) (circumstantial evidence that convinces a trier of fact beyond reasonable doubt sufficient to sustain conviction); *United States v. Starks*, 309 F.3d 1017, 1021-22 (7th Cir. 2002) (circumstantial evidence more reliable than direct evidence in some cases); *see also United States v. Thorton*, 463 F.3d 693, 699 (7th Cir. 2006) (fingerprint evidence coupled with other circumstantial evidence enough to defeat sufficiency of the evidence claim). McDonald provides no evidence demonstrating the Illinois Supreme Court's decision was contrary to law or based on an unreasonable interpretation of the facts. *Brown v. Sternes*, 304 F.3d 677, 690 (7th Cir. 2002). Accordingly, McDonald's claim must be rejected under § 2254. *See United States ex rel. Mills v. Uchtman*, No. Civ. A 05 C 6270, 2006 WL 695689, *3 (N.D. Ill. Mar. 14, 2006) (Conlon, J.) (court must defer to state court if decision is

10

"minimally consistent with the facts and circumstances of the case").

### D. Sentencing Jury's Consideration of Residual Doubt

McDonald contends his Eighth Amendment rights were violated because the trial court barred the jury from considering "residual doubt" evidence during the sentencing hearing's death penalty eligibility phase. Defendants do not have a constitutional right to present residual doubt evidence as a mitigating sentencing factor. *Franklin v. Lynaugh*, 487 U.S. 164, 174 (1988); *Smith v. Farley*, 59 F.3d 659, 666 (7th Cir. 1995) ("[t]he sentencing hearing is not an occasion for reexamining the issues of defendant's guilt"). McDonald's claim was rejected by the Illinois Supreme Court after a discussion of *Franklin* and related state cases. *See People v. Edgeston*, 623 N.E.2d 329, 351 (Ill. 1993) (adopting *Franklin*'s reasoning and holding); *People v. Fields*, 552 N.E.2d 791, 813 (Ill. 1990) (same). Further, the Illinois Supreme Court determined that even though McDonald had no right to present residual doubt evidence, the trial court allowed him to argue his innocence to the sentencing jury. *McDonald*, 660 N.E.2d at 848 (McDonald and other witnesses testified to facts supporting defense theory). The jury instructions did not preclude the jury from considering innocence evidence. *Id.* McDonald has not demonstrated there was an Eighth Amendment violation, or that the Illinois Supreme Court's decision was unreasonable. *Yarborough*, 541 U.S. at 665.

### E. *Ex Parte* Communications between Judge and Jury

McDonald claims his Sixth Amendment rights were violated because while he was absent, the trial judge responded to a jury note. *Ex parte* communications between a judge and jury are improper. *United States v. U.S. Gypsum Co.*, 438 U.S. 422, 460-62 (1978) (finding *ex parte* meeting or communication between judge and jury foreman "pregnant with possibilities for error"). A

defendant has a Sixth Amendment right to be present in the courtroom at every stage of the trial. *Illinois v. Allen*, 397 U.S. 337, 338 (1970); *Ellsworth v. Levenhagen*, 248 F.3d 634, 639 (7th Cir. 2001). However, *ex parte* communications may be found harmless. *Rushen v. Spain*, 464 U.S. 114, 119 (1983) (rejecting proposition that *ex parte* communications conducted off the record are never harmless error); *Moore v. Knight*, 368 F.3d 936, 940-41 (7th Cir. 2004) (collecting cases where "brief procedural remark[s]" by judge to jury were not constitutional error).

The Illinois Supreme Court's analysis of McDonald's *ex parte* communication claim was consistent with Supreme Court decisions and was not objectively unreasonable. The Illinois Supreme Court correctly determined there was an improper *ex parte* communication: the trial judge responded to a jury question outside McDonald's presence. The court's determination was based on Illinois law consistent with Supreme Court precedent. *See People v. Childs*, 636 N.E.2d 534, 538 (Ill. 1994) (following *Illinois v. Allen*, 397 U.S. at 338). The burden was then placed on the state to show harmless error beyond a reasonable doubt. *McDonald*, 660 N.E.2d at 849; *see also Chapman v. California*, 386 U.S. 18, 24 (1967). The Illinois Supreme Court found harmless error based primarily on two facts. First, the trial court's response to the jury note did not answer the question posed. Instead, the response stated: "You have the instructions! Continue to *deliberate*." *McDonald*, 660 N.E.2d at 458 (emphasis in original). The trial court did not indicate its views on the sentencing hearing's outcome. The communication was a benign statement that "did not discuss any fact in controversy." *Rushen*, 464 U.S. at 121. Second, the jurors were told to rely on the jury instructions. As discussed above, the instructions allowed the jury to broadly consider all reasons why the death penalty should not be imposed, even residual doubt evidence. *McDonald*, 660 N.E.2d at 849. McDonald fails to show the Illinois Supreme Court erred in its analysis or acted

unreasonably. Therefore, his claim lacks merit under § 2254.

## CONCLUSION

For the reasons set forth above, the petition for a writ of *habeas corpus* is denied.

ENTER:

*Suzanne B. Conlon*
Suzanne B. Conlon
United States District Judge

March 28, 2007